INDUSTRIAL DEVELOPMENT COMPANY, Plaintiff and Appellant, v. LEONARDO LEÓN ROSADO and AMERICAN SURETY COMPANY OF NEW YORK, Defendants and Appellees.

No. R-66-138.     Decided February 8, 1971.

*Juan Enrique Géigel, Guillermo Silva, Hernán G. Pesquera, E. Rodríguez Font,* and *I. Rivera Cordero* for appellant. *Castro & Castro* for appellees.

MR. JUSTICE RIGAU delivered the opinion of the Court.

This case involves an action to recover liquidated, agreed, and fixed damages for breach of contract, and another amount for construction cost of work in excess of the lump sum agreed upon, in accordance also with the provisions of the contract.

The trial court sustained the complaint but committed errors in the construction of the bond contract, which led it,

in turn, to commit errors in calculating the amounts to be paid to appellant by the surety.

Plaintiff-appellant, the Puerto Rico Industrial Development Company, entered into a contract with Leonardo León Rosado, the contractor, for the development of the lots of an industrial urbanization in the ward Sabana Abajo of Carolina,. P.R. The initial price agreed upon by the contracting parties was $368,400.[1] The work would be commenced on February 29, 1960 and would be terminated on or before August 27 of said year. The contract provided for the granting of extensions for different causes, among them, bad weather. Extensions were granted for that reason.

Simultaneously with the construction contract, the contractor, as principal, and appellee herein, American Surety Company of New York, as surety, signed, in behalf of appellant, a performance bond in the amount of $368,400, the initial price of the work, as security for the performance of said contract. It was agreed upon in the contract that any unauthorized delay would be subject to a daily indemnity of $200.

The Industrial Development Company granted the contractor several extensions which extended the term of delivery of the work until January 24, 1961. In view of the fact that the contractor did not complete the work, the Development Company notified him and his surety, on October 13, 1961, that it considered the contract as rescinded. Appellant made a contract for the completion of the work with another contractor, who should deliver it complete on or before April 17, 1962. This second contractor was granted an extension of the term for delivery until July 18, 1962.

At the time appellant considered the contract entered into with León Rosado as rescinded, said contractor had incurred an unauthorized delay of 262 days. That term is computed

---

[1] Subsequently a change in the work was agreed upon by the parties which increased the price to $369,785.35.

from January 25, 1961, date on which the last extension granted to him had expired, to October 13 of the same year, date on which appellant rescinded the contract.

On October 20, 1961, appellant took physical possession of the project and performed an inventory of the work carried out and of the materials and equipment therein. Appellant made an estimate of the cost of completion of the work which resulted in the amount of $65,900.

For the purposes of completing the work, appellant made a public call for bids and asked several contractors to submit their bids for the work which was needed for the completion of the project. The bidding was held on November 6, 1961, but appellant was forced to annul it because all the bids submitted by the bidders exceeded greatly the estimate of $65,900, made by appellant. Said bids fluctuated between $92,228.74 and $124,000.

The bidding having been annulled, appellant negotiated with the bidders seeking to obtain a lower bid and finally, on December 13, 1961, appellant awarded contractor Juan Díaz Rivera the contract for the completion of the project on the basis of the cost plus a profit of seven and a half percent.

In the contract with Díaz Rivera, a term of 120 days was fixed for the completion of the work, which term expired on April 17, 1962, since the order for the commencement of the work was given on December 18, 1961. Díaz Rivera was not able to complete the work within the said term and appellant extended same until July 18, 1962.

The cost of completion of the project, in accordance with the contract with Díaz Rivera, was $71,701.26, amount notably lower than all the bids made by the bidders in the aforementioned bidding which was annulled by appellant.

On September 11, 1963, appellant filed a complaint in the Superior Court, San Juan Part, against Leonardo León Rosado and his surety, claiming, after it was amended, the amount of $2,727.73 for construction cost in excess of the

price agreed upon in the contract, and the amount of $89,400 for liquidated damages at the rate of $200 daily, as agreed upon in the construction contract, for the 447 days of delay in the completion of the work the performance of which was secured by the bond issued by the surety, appellee herein.

After the trial was held, the trial court, although it sustained the complaint, ordered León Rosado to pay the plaintiff the amount of $55,127.73 and "from that amount" it ordered the surety company to pay plaintiff the amount of $15,927.73 plus costs and $1,000 for attorney's fees.[2]

Plaintiff, in its petition for review assigns several errors which, since they are interrelated among themselves, may be summarized as follows:

1. The court erred in its construction of clause No. 12 of the general conditions of the construction contract entered into between appellant and León Rosado, upon concluding that the contractor and his surety's liability for liquidated damages by reason of delay was limited only to the 262 days comprised between the expiration date of the last extension granted to León (January 24, 1961) and the date on which appellant rescinded the contract (October 13, 1961).

2. The court erred in deciding that appellant failed to take measures to reduce the amount of the liquidated damages as penalty for delay, and that therefore, the surety was liable only for the payment of liquidated damages corresponding only to the 66 days elapsed from the expiration date of the last extension (January 24, 1961) up to March 31, 1961, date on which, according to the particular view of the trial court, appellant should have rescinded the contract with León Rosado.

■ Let us see, in the first place, whether the Industrial Development Company was entitled, according to the penalty clauses of the contract, to indemnity by reason of delay only

---

[2] If the penalty for damages of $55,127.73 against the contractor individually or the balance thereof after deducting the $15,927.73 which the surety would pay would prevail, it would probably be academic. That is the reason why the performance bond is required in these construction contracts for large amounts.

from the expiration date of the last extension granted to contractor León up to the date on which the Company rescinded the contract, as it was understood by the trial court, or whether it was entitled to indemnity from the expiration date of the last extension granted to León, to the date on which the second contractor should have completed the work, without including the extension which was subsequently granted to said second contractor.

Clause No. 12, insofar as pertinent, provides the following:

"If the Contractor refuses or fails to prosecute the work . . . within the time specified or any extension thereof, or fails to complete said work within such time, the Puerto Rico Industrial Development Company may . . . terminate his right to proceed with the work. *In such event* the Puerto Rico Industrial Development Company may take over the work and prosecute the same to completion, by contract or otherwise, and *the Contractor and his sureties shall be liable* to the Puerto Rico Industrial Development Company for any excess cost occasioned to the Puerto Rico Industrial Development Co. thereby, *in addition to fixed, agreed and liquidated damages* stipulated in the Special Conditions for every calendar day of delay in the completion of the project *until the work is completed* to the satisfaction of the Puerto Rico Industrial Development Co., who shall exercise reasonable diligence in prosecuting such work to completion, by contract or otherwise; *provided further* that no such liquidated damages shall be charged against the Contractor herein for the days of delay incurred by the Puerto Rico Industrial Development Company or *any subsequent Contractor* in the completion of such work *within the term then fixed for such completion.*"[3] (Italics ours.)

There is no doubt that said clause No. 12 has the meaning and purpose that if the Industrial Development Company was bound to rescind the contract, in such event the contractor and his sureties would be liable for the damages by reason of delay until the work was completed. See that in

_____
[3] Clause No. 12 is copied verbatim in the Appendix of this opinion.

the "provided further" clause it is established that the contractor shall not be liable for the days of *delay* incurred by *any subsequent contractor* in the completion of such work within the term *then* fixed for such completion, but he is liable for the term of delay, within the second contract, until the work is completed.

In synthesis, the aforementioned clause provides that contractor León and his surety are liable for the delay in the delivery until the work is completed, even though it is completed by a second contractor, but without including the days of delay incurred by said second contractor. The surety's obligation is, however, solidary with that of León.

The text of said clause No. 12, insofar as pertinent, is clear and needs no further construction, but in the event it were necessary to resort to the case law in force, the same is adverse to appellee and favorable to appellant. In *Cristy & Sánchez* v. *Commonwealth*, 84 P.R.R. 226 (1961), we said at p. 234, the following:

"The strict construction was controlling at a time when the personal bondsmen, by a mere act of liberality, secured the public-works contract, but it lost its popularity with the advent of surety companies making a business of acting as surety for compensation. Regarding a public-works bond, it may be said that, contrary to the general assumption, the liberal or broad construction is controlling. . . ."

In the said case of Cristy, at the aforestated page, we expressly overruled the case law existing to the contrary. You can see there the overruled cases. In *A. L. Arsuaga, Inc.* v. *La Hood Constructors*, 90 P.R.R. 101, 117 (1964), we cited and followed *Cristy, supra*. We did likewise in *Ulpiano Casal, Inc.* v. *Totty Manufacturing Corp.*, 90 P.R.R. 719 (1964), where we said at p. 724, citing a court of another jurisdiction, that:

"The principle that a surety is a favorite of the law has no proper application in the case of a company organized for the express purpose of acting as surety for compensation."

To uphold the construction given to clause No. 12 by the trial court would be tantamount to placing the Development Company in the scarcely reasonable alternative of rescinding the contract without being entitled to damages by reason of delay as of the date of rescission, or of permitting the original contractor to complete the work delayingly, to the prejudice of the public purpose of the work, for the purpose of not losing indemnity by reason of delay. However, that was not what was agreed upon.

The aforementioned first error was committed. As we have seen, the Industrial Development Company is entitled, under the terms of the contract, to indemnity for the 447 days of delay which comprises the period from the expiration date of the last extension granted to León (January 24, 1961) to the date on which the second contractor should have completed the work, April 17, 1962. This period *does not include* the extension until July 18, 1962, granted by the Development Company to the second contractor. It is thus provided by clause No. 12.

The second question raised by appellant is that it was erroneous to relieve the surety from part of the obligation, because the court understood that appellant was not diligent in rescinding the contract for the purpose of mitigating the damages by reason of delay.

The question whether or not plaintiff discharged its obligation to mitigate damages must be determined in the light of the prevailing situation at the time the problem was presented, and if plaintiff chose a reasonable course of action it did not fail to perform said obligation because of the fact that it can be believed *a posteriori* that another course of action could have been more advantageous to the defendant. *In Re Kellet Aircraft Corp.*, 186 F.2d 197, 198 (1950). The duty to mitigate damages does not exist where there is a reasonable expectation of a defaulting party curing his breach

of contract by performance. *United States* v. *Russell Electric Co.*, 250 F.Supp. 2, 17 (1965). Even though the contract has already been breached, if negotiations between the parties are pending aimed at the performance thereof, and if the parties may reasonably expect that performance will be forthcoming, no duty to mitigate arises. *United States* v. *Russell Electric, supra* at 20.

In the light of these standards it is not proper in this case to reduce the compensation for delay in the delivery of the work. The party that discharges its obligations is the one favored by the law and not the defaulter. Let us see hereinafter the facts which have led us to conclude that the second error was also committed.

The work, as we have said, should have been commenced late in February 1960. Several months later, deficiencies were noted therein, but by the end of October of that year the contractor had already completed 85.9% of the work and had received partial payments amounting to $255,316.82. This amount does not include the payment for the work performed in October. After the payment corresponding to the work carried out in October was made, the chief of the Construction Department of appellant wrote a letter to Supervisor Becerril, ordering him not to certify additional payments until the deficiencies which the latter had pointed out in October were corrected by the contractor.

Subsequently an agreement was made by which the contractor received, on December 19, a check in the sum of $30,735 for the work completed up to that date, but without including the defective work. The last payment made to the contractor is dated February 27, 1961 and amounted to $14,760. Until that date appellant had paid to León sums amounting to $300,811.82, because he had completed 90.3% of the work. Said sum is equivalent to nine tenths of the price of the work performed until then.

Since the end of October 1960 until the end of February 1961, there was only one additional report of deficiencies. During the months from March to July 1961, there were several reports concerning the slow progress of the work.

On February 14, 1961, León requested an extension for the delivery date, from November 15, 1960 to March 30, 1961. The then Supervisor, Colbert Rodríguez, informed his superiors on March 24 that he was completely sure that the contractor would not be able to complete the work within that term. At that time appellant was confronted with the following situation: (1) it had knowledge that the work had certain deficiencies, which is usual in any construction work; (2) it had already paid over $300,000 for 90.3% of the work; (3) the work was due since November 15, for which reason it was entitled to indemnity for delay amounting to $27,000 for 135 days of delay, and (4) it had withheld in its possession $68,973.53, which comprised 10% of retention (according to the contract) and the estimated amount corresponding to the work pending completion.

In view of those circumstances appellant deemed it judicious not to rescind the contract at that time, but granted one last opportunity to the contractor to complete the work and to correct deficiencies.

In view of the considerable amount already compromised and of the relatively small part of the work pending completion, we cannot consider as unreasonable the course taken by appellant in view of said situation. There was no risk for the surety, nor for appellant, which would require to take the drastic course of rescinding the contract at that moment, since the *amount withheld was sufficient to recover the penalties for delay* incurred at that time by León, and to pay him the difference due. If the contractor requested at that time an extension until March 30, 1961, the most reasonable thing to do was to grant it since otherwise the contract must be rescinded and another contractor must be procured to com-

plete the work, a great disappointment which would necessarily bring about more delay, with the corresponding penalties.

In view of the sum which appellant had withheld in its possession it was reasonable to think that it was not probable to have to repeat against the surety the request to cover any penalty for delay. If contractor León completed delayingly, he was only entitled to receive the difference between the amount withheld and the penalties. The fact that Supervisor Rodríguez said that he was sure that the contractor would not be able to complete the work on March 30 does not have the weight that the trial court attributed to it and which was what apparently led it to conclude that appellant should have rescinded it at that time. The scope which Rodríguez' statement actually has, is that he calculated that the work would not be completed in the following six days. We understand that in view of such situation, appellant's decision was reasonable upon notifying the contractor on April 5, 1961, that if within the following ten days he did not show that he would be able to complete the work before the 31st of said month, the contract would be rescinded.

This notice was not obeyed nor answered by the contractor, appellant being forced to request, on April 18, from its legal adviser, to proceed to rescind the contract. After the proper steps were taken, the case was submitted to its attorneys, who, on May 2, wrote to the surety inviting the latter to arrange an interview with appellant and the contractor in order to seek to settle the matter rapidly. Said interview was held prior to the following 8th, apparently without the surety's presence. As a result of said interview the rescission of the contract was suspended.

In connection with the correspondence between appellant and the surety, there is an incident concerning a deleted or mistaken figure but which we believe the subsequent events clarify. On May 11, 1961, the surety sent a printed form to

appellant requesting to indicate what percent of the work had been completed and any pertinent comment. This form was filled out by Pedro F. Rivera, Chief of the Contract Division of appellant. It was stated therein that the delivery of the work was due and it is on the completed percent of the work that the incident arises. The surety alleges that appellant led it to error upon reporting that 97% of the work had been completed, when some days later, in another report, appellant informed that 86% had been completed. When that form was presented to Pedro Rivera, at the trial, and when he was asked specifically about that percent, he answered "I see that number 9 . . . I see that number 9 is somewhat deleted." Tr. Ev. 204. (He refers to the 9 of the figure 97.) In effect, it can be seen in said form, Defendant's Exhibit "E", that there is a blot where that 9 appears. In order to help form an opinion about the percent completed in or about May 1961—whether it was 87 or 97%—it is useful to bear in mind that in that same month of May the surety requested that information again (in view of a claim made by a supplier of the work) and appellant answered that 86% of the work had been completed and that $286,051.82 had been paid.

As of May 2, 1961, the surety knew that the contract had expired since November 1960, and in the report of May 16 appellant informs it again that delivery was due. The surety having knowledge of the delay could have requested information about the entire situation in connection with contractor León Rosado. It did not do it. Appellant was not bound to keep the surety informed about the progress of the work, unless otherwise agreed upon, and the existence of such agreement does not appear from the evidence.

Now then, appellant not only acted prudently within the circumstances, but, as a matter of fact, it mitigated the damages for delay. This was done when on June 27, 1961, the contractor wrote appellant requesting extension for the deliv-

ery date from November 15, 1960, until July 15, 1961. Said petition was investigated by Supervisor Colbert Rodríguez, who, on September 8, wrote to the Chief of the Construction Department recommending an extension until January 24, 1961. The recommendation was accepted by said chief and notified to the contractor on September 15, 1961, indicating also that the granting of said extension must not be interpreted as a waiver of the penalty for delay. Note that if appellant rescinded the contract at this time it could claim about $66,000 by reason of delay from November 15, 1960, to September 15, 1961. On the other hand, appellant extended the expiration date of the contract from November 15 to January 24, thus reducing in $14,000 its right to recover penalty for delay. It mitigated in that amount the damages.

From the facts of the case we must conclude that appellant not only strove to mitigate the damages, but also, on the occasions when it could have rescinded the contract, acted in the manner which appeared to be most reasonable at the time, granting the contractor an opportunity to complete the work. The surety itself, under less encouraging circumstances, requested appellant to give another additional opportunity to the contractor in order to complete the work. Let us see.

On October 13, 1961, appellant, having already lost all hope that the contractor would complete within reasonable time the work, wrote to him, with copy to the surety, rescinding the contract. It stated in said letter that until then the delay was of 262 days and that the penalty amounted to $26,000.[4] Six days later, on October 19, 1961, the surety wrote a letter to appellant and far from criticizing it for not having rescinded the contract, on the contrary, even after having knowledge that there was a delay of 262 days, proposed to

---

[4] The computation, by mistake, was made at the rate of $100 daily, when it should have been at the rate of $200, according to the terms of the contract. See Article 4 of the Contract, Plaintiff's Exhibit 1, and Tr. Ev. 149.

appellant not to rescind it and to grant the contractor until November 15, 1961, to complete it.

It is, then, shown that the surety not only did not question the reasonability of appellant's conduct in granting the contractor the opportunity to complete it, but it understood that its interests were protected if the contractor was granted an additional opportunity to complete it. The course of action which the surety understood protected its interests is the same which appellant understood as the best one to follow, months before when the perspectives appeared to be more encouraging.

■ We do not believe that appellant should be charged with lack of diligence to mitigate the damages for having taken a reasonable course of action, and that months later, when the situation was worse, the surety itself understood it was so. Recall that the doctrine of mitigating damages is based on the reasonability of plaintiff's conduct at the time of facing a critical situation, and in this case the reasonability of said conduct was established by defendant's subsequent conduct. If to grant the contractor additional time to complete it seemed reasonable to the surety at that time, to the point of proposing it, it can hardly, later, at the trial, set up as defense against appellant that the latter acted unreasonably in granting it.

Even more, it is fitting to mention that appellant took steps to mitigate the damages, since as we have seen before, it rejected several proposals to complete the work until obtaining one which resulted in an additional cost of only $2,727.73 in excess of the price of the rescinded contract and much less than the bids submitted in the aforementioned public bidding.

In the light of what we have discussed we understand that appellant did not fail to discharge its obligation to mitigate damages and that the court erred in reducing the total of the indemnity for delay by applying said doctrine.

Finally, we do not believe that we should reduce the amount of the damages for delay. There is nothing in the record to indicate what proceeds appellant would obtain through the lease of the facilities to be constructed in that industrial urbanization, or what the total value of the same was. As an example it is fitting to indicate that proceeds of $200 daily, which is the penalty agreed upon in this case, required an investment of $600,000 at the rate of 12% annually, rate permitted by the Reasonable Rents Act. Although we do not know the value of the land and of what was to be constructed there, it is reasonable to think that said value was considerable, for, as it has been seen, only the improvements to the land, the construction of which was entrusted to León Rosado, had a value of $369,785.35. Appellant had that considerable value of the lands and the improvements frozen at the work for over a year because of nonperformance by León. Besides those economical or material damages sustained by appellant—in view of which the liquidated sum for damages is reasonable—we must consider the incommensurable damages caused to the People of Puerto Rico (an over-populated country with a high percentage of unemployment) because of the delay in the construction of that industrial urbanization for the term of one year, two months, and 22 days.

The judgment rendered in this case by the Superior Court, San Juan Part, on March 21, 1966, will be modified in the sense of ordering defendants, Leonardo León Rosado and American Surety Company of New York, to pay severally to plaintiff, Industrial Development Company of Puerto Rico, the amounts of $2,727.73 for construction cost in excess of the price agreed upon in the contract herein involved and $89,400 for liquidated damages, plus interest, costs, and $5,000 for attorney's fees, and as thus modified it will be affirmed.

Mr. Acting Chief Justice Pérez Pimentel, Mr. Justice Ramírez Bages, and Mr. Justice Martínez Muñoz did not participate herein.

—O—

*Appendix*

"*12.   Delays—Damages*:

"If the Contractor refuses or fails to prosecute the work, or any separable part thereof, with such diligence as will insure its completion, within the time specified or any extension thereof, or fails to complete said work within such time, the Puerto Rico Industrial Development Company may, by written notice to the Contractor, terminate his right to proceed with the work or such part of the work as to which there has been delay. In such event the Puerto Rico Industrial Development Company may take over the work and prosecute the same to completion, by contract or otherwise, and the Contractor and his sureties shall be liable to the Puerto Rico Industrial Development Company for any excess cost occasioned to the Puerto Rico Industrial Development Co. thereby, in addition to fixed, agreed and liquidated damages stipulated in the Special Conditions for every calendar day of delay in the completion of the project until the work is completed to the satisfaction of the Puerto Rico Industrial Development Co., who shall exercise reasonable diligence in prosecuting such work to completion, by contract or otherwise; provided further, that no such liquidated damages shall be charged against the Contractor herein for the days of delay incurred by the Puerto Rico Industrial Development Company or any subsequent Contractor in the completion of such work within the term then fixed for such completion. If the Contractor's right to proceed is so terminated, the Puerto Rico Industrial Development Co. may take possession of and utilize in completing the work such materials, appliances, and plant

as may be on the site of the work, and necessary therefor. If the Puerto Rico Industrial Development Company does not terminate the right of the Contractor to proceed, the Contractor shall continue the work, in which event the actual damages for the delay will be impossible to determinate, and in lieu thereof, the Contractor shall pay to the Puerto Rico Industrial Development Co. as fixed, agreed, and liquidated damages for each calendar day of delay until the work is completed or accepted the amount as set forth elsewhere in the Contract Documents. This amount shall be deducted from the Contract Price for each and every calendar day after the date within which completion was required up to and including the date of completion and acceptance of the work. Said sum being specifically agreed upon as the measure of damages to the Puerto Rico Industrial Development Co. by reason of delay in the completion of the work; and the Contractor agrees and consents that the Contract price be reduced by the aggregate of damages so deducted and shall be accepted in full satisfaction for all work done under the Contract. Provided that the right of the Contractor to proceed shall not be terminated or the Contractor charged with liquidated damages because of any delays in the completion of the work due to unforeseeable causes beyond the control and without the fault or negligence of the Contractor, including, but not restricted to, acts of God, or of the public enemy, acts of the Puerto Rico Industrial Development Co., fires, floods, epidemics, quarantine restrictions, strikes, freight embargoes, and extremely heavy and continuous rainfall or delays of subcontractors due to such causes.

"*Provided further* that the Contractor shall, within 10 days from the beginning of any such delay, notify the Puerto Rico Industrial Development Co. in writing of the causes of the delay and any failure of the Contractor to give the Puerto Rico Industrial Development Company such written notice will be considered by the latter as a formal waiver of the Con-

tractor of any and all claims for extra time for such delays as herein provided. The Engineer shall ascertain the fact and the extent of the delay and the P.R. Industrial Development Co. shall extend the time for completing the work when in the judgment of the Engineer the findings of fact justify such an extension. Where the cause of the delay is due to weather conditions which render the performance of work impossible, an extension of one work day will be given the Contractor for each work day lost by the Contractor because of said weather conditions."